No. 99-365

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 226N

TIM McCULLOUGH, Individually and as the Personal

Representative of the Estate of Jeff McCullough,

NANCY McCULLOUGH, Individually and as the

mother of Jeff McCullough, and ROGER McCULLOUGH,

Individually and as the brother of Jeff McCullough,

Plaintiffs and Appellants,

v.

CITY OF BILLINGS,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Brad L. Arndorfer; Arndorfer Law Firm, Billings, Montana

For Respondent:

Michael B. Anderson; Anderson & Liechty, Billings, Montana

Submitted on Briefs: December 2, 1999

Decided: August 18, 2000

Filed:

_____

Clerk


Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Appellants Tim McCullough et al. (hereafter, the McCulloughs) appeal the judgment and orders of the District Court. We affirm.

¶3 We address the following issues:

¶4 1. Whether the District Court abused its discretion in admitting evidence concerning Jeff's prior use of his motorcycle.

¶5 2. Whether the District Court abused its discretion in excluding some evidence of subsequent remedial measures that the City of Billings undertook after the accident.

¶6 3. Whether the District Court abused its discretion in excluding evidence of signing at other intersections.

¶7 4. Whether the District Court abused its discretion in excluding opinion testimony of lay persons regarding the origin of tire marks at the scene of the accident.

¶8 5. Whether the District Court abused its discretion in excluding rebuttal evidence.

¶9 6. Whether the District Court abused its discretion in admitting out of court statements to police as business records.

## Factual and Procedural Background

¶10 One evening in October, 1993, Jeff McCullough (Jeff) and a passenger, Bess Harmon, rode a motorcycle in Billings, Montana. The motorcycle crashed at an intersection and Jeff and Bess Harmon were killed. Jeff's family filed suit against the City of Billings, alleging that the City's negligence caused Jeff's death. Following a six-day jury trial in January, 1999, a jury returned a verdict finding Jeff 65% negligent and the City of Billings 35% negligent. The District Court entered judgment in favor of the City of Billings. The McCulloughs moved for a new trial, and the District Court denied their motion. The McCulloughs appeal the orders and judgment of the District Court.

## Discussion

¶11 1. Whether the District Court abused its discretion in admitting evidence concerning Jeff's prior use of his motorcycle.

¶12 The McCulloughs argue that the District Court abused its discretion in admitting evidence of Jeff's use of motorcycles at high speeds prior to the accident as habit evidence. The McCulloughs argue that the evidence of Jeff's prior use of motorcycles was inadmissible character evidence. The McCulloughs object specifically to Holly Evans' (Evans) testimony about a high speed ride she took with Jeff and to the testimony of Jason Laremee (Laremee) "about other rides at other times at other speeds." The McCulloughs complain that Laremee was allowed to testify that he drove over 100 miles per hour with Jeff "a few weeks before the accident." At trial, deposition testimony by Laremee was read to the effect that he and Jeff, on their respective motorcycles, had exceeded 100 miles per hour several weeks before the accident, that on their respective motorcycles he and Jeff had gone as fast as 130 miles per hour in the summer preceding the accident, and that on their respective motorcycles he and Jeff had approached ninety miles per hour on streets within Billings' city limits in the summer preceding the accident. The McCulloughs argue that no evidence was introduced to show that the "rides with the girls were so routine as to become a habit." Further, the McCulloughs argue that "[t]he idea that the prior rides, with all witnesses testifying that he [Jeff] was **not** going to give a high speed ride to Bess Harmon, were habit and routine is ridiculous and not true."

¶13 The City of Billings responds that the testimony of Evans and Margaret Burns regarding motorcycle rides that Jeff took "immediately" preceding the accident are admissible under Rule 406(b), M.R.Evid., as habit evidence. The City of Billings argues further that in Cartwright v. Equitable Life Assur. (1996), 276 Mont. 1, 914 P.2d 976, this Court approved the admission of habit evidence in a civil suit. The City of Billings argues that under *Cartwright*, which concerned prior acts evidence, the evidence was similar, not remote in time, and relevant.

¶14 In denying the McCulloughs' motion for a new trial, the District Court concluded that evidence of Jeff's use of his motorcycle before the accident was habit evidence although it showed his character for disobeying speed limits and riding unsafely. The District Court found that this evidence was relevant regarding the issues of Jeff's comparative negligence and his speed at the time of the accident.

¶15 Rule 406 provides:

**Habit; routine practice.**

(a) Habit and routine practice defined. A habit is a person's regular response to a repeated specific situation. A routine practice is a regular course of conduct of a group of persons or an organization.

(b) Admissibility. Evidence of habit or of routine practice, whether corroborated or not, and regardless of the presence of eyewitnesses, is relevant to prove that conduct on a particular occasion was in conformity with the habit or routine practice.

(c) Method of proof. Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

¶16 In the present case, we conclude that the testimony of Evans, Burns, and Laremee established that Jeff had the habit of riding his motorcycle at high speeds. *Compare* Rule 406(a), M.R.Evid. (defining habit as "a person's regular response to a repeated specific situation"). As the McCulloughs concede, a central issue at trial was whether Jeff was speeding at the time of the accident. The evidence that Jeff had a habit of driving his motorcycle at high speeds was relevant to the trial issues of his speed at the time of the

accident and his comparative negligence.

¶17 We note too that even assuming *arguendo* that this evidence of Jeff's prior use of his motorcycle was prior bad acts evidence, the McCulloughs cannot plausibly maintain that this evidence prejudiced them when their own witness, Burns, testified that on the night of the accident Jeff took her for a high speed ride aboard his motorcycle. Burns testified that Jeff "went as fast as you could to accelerate and as fast as you could to decelerate, I guess." Nor did the McCulloughs object when Burns, on cross-examination, testified that she believed that she and Jeff had gone 120 miles per hour on his motorcycle. Moreover, the McCulloughs' witness, Dr. William Berg, estimated that Jeff's speed at the time of the crash was forty-five to fifty-five miles per hour although the speed limit was thirty-five miles per hour.

- ¶We hold that the District Court did not abuse its discretion in admitting habit evidence that Jeff, with and without passengers, routinely drove his motorcycle at high speeds.
- ¶2. Whether the District Court abused its discretion in excluding some evidence of subsequent remedial measures that the City of Billings undertook after the accident.
- ¶The McCulloughs argue that the District Court abused its discretion in excluding evidence of subsequent remedial measures that the City of Billings undertook after the accident. The McCulloughs argue that the subsequent remedial measures were admissible because the City of Billings denied that there was any need for them. The McCulloughs assert that there was "clearly controverted testimony on the feasibility and necessity of different signing at the intersection."
- ¶The City of Billings responds that it never argued at trial that different signing at the intersection where the accident occurred was not feasible. The City argues that the District Court therefore did not err in denying the admission of evidence of subsequent remedial measures. Moreover, the City of Billings argues that some evidence of subsequent remedial measures was admitted, including the trimming of tree limbs that allegedly obstructed the Stop sign.
- ¶Rule 407, M.R.Evid., provides:

**Subsequent remedial measures.**

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the

exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Rule 407, M.R.Evid.

1. ¶The McCulloughs have neither shown that the City of Billings controverted the feasibility of subsequent remedial measures nor shown that the excluded evidence of such measures was necessary for impeachment purposes. For example, the McCulloughs have not pointed to any testimony by the City of Billings' experts that the intersection's condition at the time of the accident was "preferable" to its condition after the City of Billings implemented subsequent remedial measures. *Compare* Cech v. State (1979), 184 Mont. 522, 531, 604 P.2d 97, 102 (concluding evidence State installed guardrail in recovery area where accident occurred admissible to refute testimony that recovery area "preferable to guardrail"). Moreover, the McCulloughs do not dispute the District Court's finding, in its Order denying their motion for New Trial, that "the jury actually received evidence of the changes [made after the accident] numerous times, foremost among them being Officer Carpani's videotape." We hold that the District Court did not abuse its discretion in declining to admit some evidence of subsequent remedial measures.

2. ¶3. Whether the District Court abused its discretion in excluding evidence of signing at other intersections.

3. ¶The McCulloughs argue that the District Court abused its discretion in excluding evidence of signing at other intersections. The McCulloughs appear to argue that evidence of signing at other intersections would be probative of "driver expectation."

4. ¶The City of Billings responds that the District Court properly excluded evidence of signing at other intersections because that evidence "would not make any fact regarding this accident more or less probable."

5. ¶Relying on this Court's decision in Runkle v. Burlington Northern (1980), 188 Mont. 286, 613 P.2d 982, the District Court concluded, in its order denying the McCulloughs' motion for a new trial, that evidence of signing at other intersections "was irrelevant and inadmissible." In *Runkle*, the Court concluded:

Likewise, appellants sought to prove the existence of automatic warning signals on other crossings on the railroad in northwestern Montana. This evidence was offered so that

appellants could show, by the introduction of such evidence, that crossings which were less dangerous and with less vehicular traffic count were nevertheless equipped with automatic warning devices, while the Troy crossing was not so equipped. The trial court excluded this evidence on the basis of relevance. Here again the discretion of the District Court controls.

*Runkle*, 188 Mont. at 293, 613 P.2d at 987.

¶We agree. In the present case, we conclude that the District Court did not abuse its discretion in excluding evidence of signing at other intersections. The McCulloughs have failed to show how driver "expectations" at other intersections were relevant to Jeff's speed at the time of the accident, which they concede was a central issue at trial.

¶4. Whether the District Court abused its discretion in excluding opinion testimony of lay persons regarding the origin of tire marks at the scene of the accident.

¶The McCulloughs argue that the District Court abused its discretion in excluding testimony by two private investigators, Ron Maki and Walter Maricich (Maricich), regarding whether marks at the accident scene were acceleration marks created by Jeff's motorcycle. The McCulloughs appear to argue that their witnesses should have been able to give lay opinion testimony regarding whether "they found acceleration marks as opposed to braking marks, something within everyone's knowledge."

¶The City of Billings responds that whether the tire marks were acceleration marks is "clearly expert testimony, in that such testimony is not within the common knowledge or understanding of the jury."

¶At trial the McCulloughs asked Maricich about a photograph that he took at the accident scent. Maricich responded that "[i]t appeared to be either a skid mark or an acceleration mark. Based on a couple of other findings of mine, I assumed it was an acceleration mark." The City of Billings objected to his testimony.

¶Rule 701, M.R.Evid., provides for the admission of a lay witness opinion that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

¶We hold that the District Court did not abuse its discretion in excluding lay opinion testimony regarding the cause of tire marks. As Maricich's testimony demonstrates, his opinion about the marks was based not on his personal perceptions but rather on other "findings" that he made. An expert opinion "generally is one 'not within the

range of ordinary training or intelligence.' " Massman v. City of Helena (1989), 237 Mont. 234, 242, 773 P.2d 1206, 1211. The McCulloughs did not qualify their witnesses as experts. Moreover, we note that the McCulloughs' complaint that the District Court was inconsistent in admitting lay opinion about speed while excluding lay opinion testimony about the marks is without merit. Lay witness opinion about speed is admissible when based on the personal perceptions of lay witnesses. *Compare* Ho v. United States (9th Cir. 1964), 331 F.2d 144 (concluding trial court did not err in admitting testimony of witnesses as to speed of car).

8. ¶5. Whether the District Court abused its discretion in excluding rebuttal evidence.

9. ¶The McCulloughs argue that the District Court abused its discretion in excluding testimony that would rebut the testimony by Laremee and Evans about high speed rides on Jeff's motorcycle. The McCulloughs sought to introduce evidence regarding Jeff's "real driving habits, his concern for safety, his long familiarity with motorcycles etc. without opening the door." The McCulloughs appear to contend that Evans and Laremee's testimony was "character" evidence and that the rebuttal evidence was relevant.

10. ¶The City of Billings responds that the District Court correctly excluded evidence of Jeff's riding habits as cumulative.

11. ¶The McCulloughs have failed to show how evidence of Jeff's "real" driving habits, his concern for safety, or his familiarity with motorcycles would rebut the testimony that Laremee and Evans, not to mention the McCulloughs' own witness, Burns, gave regarding the speeds at which Jeff habitually drove his motorcycle. We hold that the District Court did not abuse its discretion in excluding the McCulloughs' "rebuttal" evidence.

12. ¶6. Whether the District Court abused its discretion in admitting out of court statements to police as business records.

13. ¶The McCulloughs argue that the District Court erred in admitting witness statements as "evidence [of] business records." *Citing* Bean v. Montana Bd. Of Labor Appeals, 1998 MT 222, 290 Mont. 496, 965 P.2d 256, the McCulloughs appear to contend that the witness' statements were hearsay.

14. ¶We note, however, that the McCulloughs make no claim that the admission of those statements prejudiced them. Moreover, although the McCulloughs cite to the record where they objected to the statements, the McCulloughs do not cite to the record where the District Court admitted the statements. Rule 23(e), M.R.App.P., provides in pertinent part that "[w]henever a reference is made in the briefs to the record, the reference must be to particular parts of the record, suitably designated, and to specific pages of each part." We conclude that the McCulloughs have failed

to suitably designate the record for purposes of our review, and we therefore decline to review their contention. Finally, we note that the McCulloughs appear to argue that this Court should adopt a cumulative error doctrine for civil cases. Without any citation to the record, the McCulloughs appear to argue that the District Court "gave every possible indication to the jury that she favored the City of Billings and felt the jury should rule in [its] favor." The McCulloughs have again failed to support their argument with suitable references to the record, and we decline to review this contention as well.

15. ¶The judgment and orders of the District Court are affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

Justice Terry N. Trieweiler dissenting.

1. ¶I dissent from the majority opinion. Because of evidentiary errors which I conclude were prejudicial to the Plaintiff, I would reverse the judgment of the District Court.

### Habit Evidence

1. ¶I conclude that there was an insufficient factual foundation for the admission of Jeff McCullough's acts on prior occasions as habit evidence. To be admissible as a

habit, there must be a foundation laid to show that a prior act demonstrates a person's regular response to a repeated specific situation. Rule 406(a), M.R.Evid.

Only when the examples offered to establish the pattern of conduct are numerous enough to base an inference of systematic conduct and to establish a regular response to a repeated specific situation are they admissible to establish pattern or habit; and, although a precise formula cannot be proposed for determining when behavior may become so consistent as to rise to the level of habit or routine, adequacy of sampling and uniformity of response are controlling considerations.

29 Am. Jur. 2d *Evidence* § 403 (1994).

1. ¶Five witnesses were called to testify regarding the Decedent's prior driving habits. Two former passengers testified that while riding with him, he had taken them for high speed rides. However, two others testified that they had previously been passengers on the Decedent's motorcycle and that at no time did he ever exceed the speed limit. The fifth witness had never been a passenger on the Decedent's motorcycle but had ridden motorcycles with him. He testified that under different circumstances they had exceeded the speed limit, but gave the following testimony regarding his normal method of operation:

Q. Would you describe his driving, the manner in which he drove, as a general matter, during the occasions in which you were riding with him on streets in Billings?

A. He'd drive just like he would his car. He'd drive normal, just like everybody else.

Q. Did he generally comply with the speed limit?

A. Yes.

Q. Would it be fair to say that Jeff had a habit of driving in excess of the speed limit?

A. No.

Q. Why?

A. Because he usually drove the speed limit, and we didn't have any money to be paying for tickets and paying for higher insurance, so we never really would drive fast.

1. ¶Holly Evans, one of the two persons who testified that she had previously been a passenger when the Decedent exceeded the speed limit, gave the following testimony regarding his normal practice:

Q. Based on your experience with Jeff on rides prior to October 16, do you believe, Holly that it would be fair to say that Jeff habitually drove over the speed limit?

A. No.

1. ¶The quoted testimony of Jason Laremee is the closest any witness came to describing the Decedent's driving habits. He testified that it was the Decedent's habit to obey the speed limit. Other evidence allowed by the District Court merely set forth specific examples of prior occasions on which the Decedent had exceeded the speed limit. There was absolutely no foundation to establish that he did so as a "routine practice" or as a "regular response to a repeated specific situation." As such, the prior incidents were simply evidence of prior acts to demonstrate the Decedent's character. Evidence of prior acts to demonstrate character is specifically prohibited by Rule 404(b), M.R.Evid. Neither the District Court nor the Defendant has demonstrated that the evidence comes within any of the exceptions to the normal rule of exclusion provided at Rule 404(b). In paragraph 17 of the majority

opinion, the offending testimony is excused on the basis that the Plaintiffs themselves offered evidence that the Decedent had operated at excessive speeds on occasion. However, the Plaintiffs did so only after unsuccessfully moving the District Court to exclude that evidence which they knew would be offered by the Defendant. When the District Court denied that motion, it was not unreasonable for the Plaintiffs to attempt to blunt its impact by offering a small part of the evidence in their own case in an effort to put it in context.

2. ¶For these reasons, I dissent from the majority's conclusion that the District Court did not abuse its discretion when it admitted evidence of speeds at which Jeff McCullough had operated his motorcycle on occasions prior to the incident which is the basis for this lawsuit.

## Subsequent Remedial Measures

1. ¶The issue of subsequent remedial measures requires more factual development than included in the majority opinion.

2. ¶At the time of Jeff McCullough's fatal accident, he was operating his motorcycle on a street in Billings and approaching a T-intersection about which he had no forewarning. Furthermore, the stop sign at the end of the T-intersection was substantially obscured by a telephone pole and a tree. It was the City of Billings' defense in this case, however, that the intersection was adequately signed and that, in fact, "oversigning" intersections is a bad idea. In the face of that defense, the jury was denied evidence that following this accident, the City trimmed the tree which partially blocked the stop sign, moved the location of the stop sign pole closer to the street, eventually mounted the sign on an arm extending from the pole to get it even closer to the street, gave advance warning of the stop sign several hundred feet prior to its location, and placed a yellow double-arrow sign at the end of the street.

3. ¶Rule 407, M.R.Evid. provides that subsequent remedial measures, while generally not admissible, are admissible when offered for the purpose of proving "feasibility of precautionary measures, if controverted, or [for] impeachment." In *Runkle v. Burlington Northern* (1980), 188 Mont. 286, 294, 613 P.2d 982, 987, this Court held in language relevant to and controlling the issue in this case that:

In this case, experts testified for the railroad that the crossing was not extra hazardous. The fact that automatic signals were installed on the crossing after the accident would have been relevant for the purpose of impeachment as well as to show feasibility. It was prejudicial error to exclude this evidence.

For the same reason, it was prejudicial error to exclude evidence of the subsequent remedial measures taken at the intersection involved in this case. To demonstrate the dramatic changes made at the intersection following the accident obviously impeaches the City's contention that the signing was adequate at the time of the accident. Furthermore, the subsequent remedial measures were relevant to impeach the following testimony from the Defendant's expert which suggested that placing signs at this intersection in addition to the stop sign was not feasible. Richard Cannon testified as follows:

Q. Are there any cautions in the manual on uniform traffic control devices against excessive signage?

A. Yes there are.

Q. What kinds of cautions are made?

A. There are-actually, it comes up in a couple of different places. The manual on uniform traffic control devices is not the only place where that's a caution. If you overdo, if you overload the number of signs and the number of traffic control devices, and let's say for example-

. . . .

If you overdo traffic control, it just gets disrespected or disregarded and then you're really saying, you know, that one really doesn't make a whole lot of sense for me. I know my limits, I know how I drive, and that one doesn't make much sense.

1. ¶It was Plaintiffs' contention that signing in addition to a stop sign was necessary at

the intersection where Jeff McCullough had his fatal accident. It was clearly the inference from Cannon's testimony that additional signing was not feasible because it would constitute signing overload. The fact that following the accident, the City put in the same additional signs that Plaintiff contended were necessary in the first place was important evidence which the jury, in this case, was precluded from hearing. The impact of excluding that relevant evidence was aggravated when the investigating officer was allowed to testify from a video that he prepared shortly after the Decedent's accident which illustrated the stop sign in question after it had first been moved to a location closer to the street. Even then, the Plaintiffs were denied the opportunity to explain to the jury that the stop sign was not located where it had been at the time of the Decedent's fatal accident.

2. ¶For these reasons, I conclude that the District Court abused its discretion when it excluded evidence of subsequent remedial measures, that the District Court's error was prejudicial to the Plaintiffs and I dissent from the majority's conclusion that the District Court did not abuse its discretion.

## Hearsay Evidence

1. ¶Finally, I dissent from the majority's refusal to consider the Appellant's contention that the District Court abused its discretion when it admitted out-of-court statements given to the police as a business record exception to the rule which excludes hearsay evidence.

2. ¶During the cross-examination of the investigating officer, J. Carpani, the City moved the admission of three statements taken by Billings police officers from witnesses to the Decedent's accident. The first was taken from Tammy James at the scene of the accident. The second was also taken from Tammy James approximately one month following the accident and the third was taken from Diane Zemliska. All three statements were objected to by the Plaintiffs based on the rule excluding hearsay. However, all three exhibits were admitted by the District Court as regular business records of the Billings Police Department pursuant to Rule 803(6), M.R. Evid.

3. ¶James ultimately testified in person, therefore, I conclude that the Plaintiff had an opportunity to cross-examine her and the admission of her statement was not prejudicial. However, her mother, Diane Zemliska, did not testify.

4. ¶Although upon reflection defense counsel moved to withdraw the statements and the jury was not allowed to take them to the jury room, Officer Carpani was allowed to testify from the statement regarding Zemliska's observations on the night of the

accident. He testified that her observations corroborated her daughter's testimony that the motorcycle was traveling at a high rate of speed and that immediately after it hit the curb it began to flip. The action of the motorcycle after it came into contact with the curb was an important factual issue created by conflicting testimony of expert witnesses for the parties. Zemliska's out-of-court statement corroborated opinion evidence given by the Defendant's expert. Yet, Plaintiff had no opportunity to cross-examine her.

5. ¶Although there is no prior Montana case on point, other courts have held that "when police reports contain witness statements, and the witness statements are offered to prove their truth, the statements themselves generally,are inadmissible." *Jacobs v. City of Port Neches* (E.D. Tex. 1998), 7 F. Supp. 2d 829, 835. *See also Ariza v. City of New York*, (2d Cir. 1998), 139 F.3d 132, 134, and *United States v. Dotson*, (5th Cir. 1997), 821 F.2d 1034, 1035. I agree with those decisions.

6. ¶Therefore, I conclude that the District Court abused its discretion when it admitted hearsay statements included within the police department's records and that that evidence was prejudicial to the Plaintiff. I dissent from the majority's decision not to review this issue.

7. ¶For all of these reasons I dissent from the majority opinion. I would reverse the judgment of the District Court and remand for retrial unaffected by the District Court's erroneous evidentiary rulings.

/S/ TERRY N. TRIEWEILER